UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Joanne Maksym,** | ) | **CASE NO. 1:12 CV 3051** |
| *parent of Steven Maksym* | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Strongsville City School District,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

The matter before this Court is an administrative appeal. Appellant appeals the State Level Review Officer's decision to affirm the Impartial Hearing Officer's conclusion that defendant did not deny plaintiff a "free appropriate public education." For the reasons that follow, judgment on the administrative record is GRANTED in favor of defendant.

**FACTS**

The facts of this case are largely undisputed, although the parties' interpretation of those facts occasionally differs.

1

Plaintiff, Steven Maksym[1], suffers from galactosemia, a rare metabolic disorder that has caused him brain damage, cerebral palsy, and other problems. Plaintiff previously attended the Strongsville City School District ("School District") during the 2009-2010 and 2010-2011 school years. Plaintiff aged out of the School District after the end of the 2010-2011 school year.

It appears that, beginning in October of 2009, several meetings were held by the Individual Education Plan ("IEP") team at which plaintiff's educational goals were discussed. On October 30, 2009, the IEP team completed a first draft of the transition goals for the upcoming IEP. Although plaintiff's mother ("Parent") was invited, she did not attend the meeting. On November 4 and 11, 2009, the IEP team met with Parent and discussed reducing the amount of phonics instruction and increasing functional life skills instruction to enable plaintiff to transfer into the "adult" world. On or about November 20, 2009, the School District sent Parent a draft IEP. Three meetings were held in December. At one of the meetings, Parent requested that the School District conduct situational assessments. The School District contacted Polaris and asked it to complete a situational assessment at its Community Work Experience program.

Thereafter, on March 2, 2010, the IEP team met to review the assessment and continue development of the IEP plan. On March 5, 2010, Parent complained to the school that the School District was discriminating against plaintiff. In response, on March 12, 2010, the School District provided Parent a PR-01. Parent responded to the PR-01 on March 22, 2010. She

---

[1] Plaintiff, Joanne Maksym, brings the lawsuit on behalf of her son, Steven Maksym. For purposes of clarity, the Court will refer to Steven Maksym as the plaintiff.

2

indicated that "there were no new issues presented in her March 22nd letter, as they were 'consistent with prior requests.'" On April 13, 2010, the team agreed that plaintiff would participate in the Polaris program for the last quarter of the year. In addition, at Parent's request, the IEP team agreed to review plaintiff's "transition goals" in September of 2010.

On June 8, 2010, the IEP team met with Parent. The School District presented Parent with a 2010-2011 IEP, which the School District considered to be a draft. At the meeting, Parent refused to sign the IEP. Rather, she left the meeting abruptly stating, "If there is no access to the general curriculum and there is no Board Approved Curriculum to write this IEP, then there is no point in continuing." The remainder of the IEP team signed the IEP, which provided goals in Language Arts, Math, Reading, and Employability Skills. Goal 1 focused on functional writing and speaking skills. The objectives included ensuring that plaintiff could "communicate a message or a note when prompted; using a reference card, he would accurately place information in the proper areas filling out personal data on a form, including his name, address, telephone number, date of birth and name of parents; and doing the same without a reference card. Goal 2 focused on reading and comprehension and Goal 3 focused on functional mathematics, which included things like accurately counting coins and purchasing items with a calculator and determining change. Goals 4 and 5 were revised in September of 2010 to comport with plaintiff's placement at Polaris. These goals focused on multi-step work tasks and work speed.

Prior to 2010-2011, plaintiff received dedicated English and math classes. Part of these classes included 60-minutes per week of one-on-one instruction in both subjects. Plaintiff's schedule changed significantly during this final year. Plaintiff was placed in a "community work experience" program known as Polaris for the first four periods of the day. Three remaining

3

instructional periods existed each day.  Two of these periods were for a "transition to work" class ("TTW") that included embedded reading and math skills.  The final period, *i.e.*, eighth period, was initially a study hall.

On September 29, 2010, a meeting was held at Parent's request.  Plaintiff's mother strongly objected to the eighth period placement and the School District assigned plaintiff to the guidance office to work as an "aide."  On November 5, 2010, the IEP team again met to discuss Parent's concerns regarding transportation issues.  The IEP team agreed to add district-provided transportation and the IEP was revised to so reflect.  The IEP team again met with all service providers on February 28, 2011.  Parent again expressed concerns about plaintiff's eighth period assignment and the School District placed plaintiff in an art exploration class for three days each week.

The IEP team met again on June 1, 2011.  At this meeting, the IEP team determined that plaintiff was eligible for the extended school year ("ESY") program.  The team signed an agreement regarding plaintiff's eligibility.  Parent refused to sign because she "agree[d] with the ESY, but [did] not agree with the delivery of services in [his] current IEP."

On July 6, 2011, plaintiff filed a request for Due Process before an Impartial Hearing Officer ("IHO").  A hearing was held over the course of 14 hearing days and 13 witnesses were called to testify.  The IHO concluded that plaintiff failed to establish that the School District violated the Individuals with Disabilities Education Improvement Act ("IDEA").  Thereafter, plaintiff appealed the decision to the Ohio Department of Education's State Level Review Officer ("SLRO").  Plaintiff challenged only two conclusions reached by the IHO.  Specifically, plaintiff argued that the School District committed a procedural violation of the IDEA by

4

engaging in predetermination. Plaintiff also claimed that he derived no educational benefit from his eighth period placement. The SLRO rejected both arguments and affirmed the findings made by the IHO.

Thereafter, plaintiff filed this appeal, which is now ripe for decision.

## **ANALYSIS**

This is an appeal of an administrative action brought pursuant to the IDEA. As such, this Court must conduct a "modified *de novo*" review. *Nack v. Orange City School District*, 454 F.3d 604, 609 (2006). Pursuant to this standard, this Court must "make findings of fact based upon a preponderance of the evidence contained in the complete record." *N.L. ex rel. Ms. C. v. Knox County Sch.*, 315 F.3d 688, 692 (6th Cir. 2003). At the same time, the Court must give "some deference to the fact findings of administrative proceedings, particularly when educational expertise is essential to the findings." *Id*. Thus, while the Court may not simply "adopt the state administrative findings without an independent re-examination of the evidence," the Court also may not "substitute [its] own notions of sound educational policy for those of the school authorities...." *Deal v. Hamilton Cty. Bd. Edu.*, 392 F.3d 840, 849 (6th Cir. 2005)(internal quotations and citations omitted).

"The purpose of the IDEA is to give children with disabilities a free appropriate public education designed to meet their unique needs." *Id*. at 853. To that end, "school districts receiving funds under the IDEA are required to establish an IEP for each child with a disability." *Id*. The IEP must "contain a specific statement of the child's performance levels, the child's short-term and long-terms goals, the educational and other services to be provided, and criteria for evaluating the child's progress." *Id*. (citations and quotations omitted).

5

> There are two parts to a court's inquiry in suits brought pursuant to the IDEA. First, the court must determine whether the school system has complied with the procedural requirements set forth in the IDEA. Second, the court must assess whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits.... Parties challenging an IEP have the burden of proving by a preponderance of the evidence that the IEP devised by the school district is inappropriate.

*Id*. at 853-54.

    1. Procedural violation

> ...[A] court should strictly review an IEP for procedural compliance, although technical deviations will not render an IEP invalid. A finding of procedural violations does not necessarily entitle appellants to relief. Only if a procedural violation has resulted in a denial of a FAPE, may relief be granted.... If the procedural requirements of the IDEA are met, greater deference is to be afforded to the district's placement decision.

*Nack*, 454 F.3d at 609-10.

Predetermination is a procedural violation of the IDEA that can cause substantive harm "where the parents are effectively deprived of meaningful participation in the IEP process." *Id*. at 610. "Participation must be more than form; it must be meaningful." *Deal*, 392 F.3d at 858.

> However, predetermination is not always synonymous with preparation. Federal law prohibits a completed IEP from being presented at the IEP Team meeting or being otherwise forced on the parents, but states that school evaluators may prepare reports and come with preformed opinions regarding the best course of action for the child as long as they are willing to listen to the parents and parents have the opportunity to make objections and suggestions.

*Nack*, 454 F.3d at 610

In *Deal*, the Sixth Circuit addressed a predermination claim. There, plaintiffs brought suit against the public school system for refusing to consider "the Lovass style ABA for autistic children." The district court rejected the argument that the school district engaged in predetermination, in part because the parents were "present at every IEP meeting" and "forcefully advocate[d] their position." *Deal*, 392 F.3d at 856. In reversing the district court, the

6

Sixth Circuit held as follows:

> The facts of this case strongly suggest that the School System had an unofficial policy of refusing to provide one-on-one ABA programs and that School System personnel thus did not have open minds and were not willing to consider the provision of such a program. This conclusion is bolstered by evidence that the School System steadfastly refused even to discuss the possibility of providing an ABA program, even in the face of impressive results. Indeed, School System personnel openly admired and were impressed with Zachary's performance...until [plaintiffs] asked the School System to pay for the ABA program. Several comments made by School System personnel suggested that they would like to provide Zachary with ABA services...but they were prevented from doing so...by the School System policy. The clear implication is that no matter how strong the evidence presented by the [plaintiffs], the School System would have refused to provide the services. This is predetermination.

*Id*. at 858.

Plaintiff argues that defendant violated the procedural requirements of the IDEA by engaging in "predetermination." According to plaintiff, the IHO improperly interpreted *Deal* and, therefore, applied the wrong burden of proof in assessing the predetermination claim. Specifically, plaintiff argues that the IHO required him to establish, pursuant to *Deal*, that "no matter what information [Parent was] to provide the school district, the school district would be unwilling to consider the alternatives."

In response, the School District argues that, as explained in the decision issued by the SLRO, the IHO properly applied *Deal* in rejecting plaintiff's predetermination claim.

Upon review, the Court rejects plaintiff's argument. As an initial matter, the IHO's opinion contains a "burden of proof" section, in which the IHO correctly notes that plaintiff bears the burden of proof by a preponderance of the evidence. *See*, IHO Decision and Order at p.10 (noting that if the evidence is "evenly balanced," the IHO must decide in favor of the school district). Moreover, the IHO, as throughly explained by the SLRO, properly applied *Deal*. *Deal* specifically held that predetermination exists when "no matter how strong the evidence presented

7

by the [plaintiffs], the School System would have refused to provide the services." Nothing in the IHO opinion expands *Deal* beyond its borders. Moreover, the SLRO accurately analyzes the IHO decision as follows:

> ...[C]ontrary to Parent's arguments and interpretation of the IHO Decision, the IHO throughly and extensively quoted and applied *Deal* and other pre-determination cases. In fact, the IHO did not rely on or apply the single 'no matter what' quote as argued by the Parents. Actually, the IHO noted that it 'is not enough that the parents have the opportunity to attend IEP meetings and express their opinion. Further, the IHO considered that the *Deal* court emphasized that 'the parents' presence and ability to speak at IEP meetings did not *per se* afford them a meaningful opportunity to participate in the IEP process....

Thus, any argument that the IHO applied an erroneous burden of proof is rejected. The IHO thoroughly analyzed *Deal* as well as other predetermination cases and concluded that the evidence presented by parents 'falls significantly short" of *Deal* and that Parent's burden is not met by a "mere demonstration that the school district formed an opinion prior to the formulation of the final IEP and that the final IEP reflected that opinion." IHO Decision and Order at p. 22. This analysis is not inconsistent with *Deal*. Accordingly, the argument is rejected.

Plaintiff also argues that the SLRO erred in determining that the June 8, 2010 meeting and the prior meetings were sufficient to satisfy the participation requirement. According to plaintiff, the pre-June 8, 2010 meetings had no bearing on the removal of one-on-one instruction and placement in a study hall. In addition, plaintiff argues that there was sufficient evidence demonstrating that the June 8, 2010 meeting was a sham. Specifically, plaintiff points out that the School District presented Parent with an "already completed IEP form...for drafting the 2010-11 IEP." In addition, plaintiff points out that the decision to remove one-on-one instruction was made "independently" of Parent. Plaintiff further notes that one teacher recommended removing him from the list of guidance office aids at the request of Parent. The

8

special education supervisor responded that his name should be kept on the "tentative list for now" so that the School District could compile additional information in an attempt to "change [Parent's] mind."

Upon review, the Court rejects plaintiff's argument and agrees with the conclusions of both the IHO and the SLRO. As an initial matter, the Court agrees that the numerous meetings held prior to June 8, 2010, were at least arguably related to the 2010-11 IEP. *See, e.g.*, R110 (plaintiff's participation in CWE in fourth quarter of 2009-2010 school year considered transitional experience for 2010-2011 school year; IEP team to reconvene in fall of 2010). *See also*, Tr. 1136-37 (Parent testimony that "future planning statement" in 2010-2011 IEP was discussed at meeting prior to June 8th). Regardless, as noted by the IHO, even if these meetings are not considered related to the 2010-11 IEP, plaintiff's evidence falls short of establishing predetermination. At best, plaintiff demonstrates that a draft IEP was presented at the June 8th meeting and that the School District previously concluded that the removal of one-on-one instruction time was the appropriate course. As both the IHO and the SLRO correctly note, these actions do not in and of themselves amount to predetermination. School districts are not prohibited from preparing reports, draft IEPs and discussing recommendations among themselves prior to IEP team meetings so long as the parents are aware that the drafts are drafts. See, *N.L. ex rel. Ms. C. v. Knox County Sch.*, 315 F.3d 688, 692 (6th Cir. 2003). *See also*, 71 Fed. Reg. 46678. Here, Parent testified that she discussed the removal of the one-on-one tutoring at the June 8th meeting. She then voluntarily left the meeting when the School District did not accede to her requests. There is no requirement that the School District implement the wishes of the parent or that the parent have final say over the placement of the child. Rather, all

9

that is required is that the parents are afforded meaningful participation in the formulation of the IEP. In all, the Court agrees with the IHO and the SLRO that plaintiff fails to establish that the School District engaged in predetermination.

Plaintiff also points out that one teacher requested that plaintiff be removed from the list of guidance office aides. The Court finds, however, that this evidence does not demonstrate predetermination.[2] The teacher made the request in order to mollify Parent. And, the facts of the case show that plaintiff was initially scheduled to a be in a study hall. At the request of Parent, he was moved out of the study hall. The School District then placed him as a guidance office aide. Parent again approached the school and the School District ultimately placed plaintiff in an art class three days a week and in the guidance office two days a week. These actions do not demonstrate predetermination. If anything, they tend to show that the School District (although not granting Parent's request for one-on-one instruction time) did allow parental participation.

2. Substantive violation

---

[2] It appears that plaintiff argues that a procedural violation exists because the IEP (although it removed one-on-one instruction) did not expressly provide that plaintiff would be placed in a study hall during eighth period. It appears that Parent wasn't notified of the study hall placement until after the school year started. The procedural aspect of this issue as it relates to predetermination was not presented to the SLRO and, in fact, it is not even clear what facts were presented to the SLRO. *See*, Parents-Petitioner's Appellant's Brief at p. 8 ("[The decision to remove Steven from one-on-one math and reading instruction and place him in a study hall] was made completely independently of Parents, and when Mrs. Maskym found out about it, apparently at the June 8, 2010 meeting...her requests were ignored."). Thus, the Court will not consider for the first time, whether the failure to notify Parent of the study hall placement (independently of the notification of the removal of one-on-one instruction) amounts to a procedural violation.

Plaintiff also argues that his eighth period placement in the guidance office as an aide was not reasonably calculated to confer an educational benefit. According to plaintiff, placement in the guidance office offered only "idle time," and therefore, no learning happened during eighth period. Plaintiff points to an email sent by the guidance office secretary requesting that plaintiff's teachers send work so that plaintiff does not "sit and do nothing." Plaintiff claims that some type of "dedicated" math and reading instruction should have occurred during this time. In response, the School District argues that it is not legally required to "maximize a student's potential." Nor is it required to "provide the best possible education." Rather, the School District need only offer an individualized program of special education designed to meet a student's unique needs and develop a corresponding IEP that is calculated to "provide an educational benefit." *Bd. of Educ. Of the Hendick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). The School District claims that the IEP is designed to provide an educational benefit. Specifically, the School District notes that goals set in the IEP relate primarily to providing plaintiff with functional skills, including reading, mathematics, and vocational skills to enable him to transition into adult services. The eighth period placement in the guidance office furthered these goals.

With regard to determining whether a substantive violation of the IDEA exists, the Court must keep in mind that "[t]he preponderance of the evidence language in the [IDEA] is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Burilovich v. Board of Educ. of Lincoln Consol. Schools*, 208 F.3d 560, 566 (6th Cir. 2000)(internal citations and quotations omitted).

Rather, as the Supreme Court noted:

11

> In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child.

*Rowley*, 458 U.S. at 207.  "Indeed, federal courts are generalists with no expertise in the educational needs of handicapped children and will benefit from the factfinding of a state agency, which is presumed to have expertise in the field." *Burilovich*, 208 F.3d at 566.  See also, *Cleveland Heights–Univ. Heights City School Dist. v. Boss*, 144 F.3d 391, 398–99 (6th Cir.1998) (noting that the due weight standard of review "militates against second guessing the educational expertise of the administrative officers and conclusions predicated upon these [sic] expertise").

Upon review, the Court finds that plaintiff fails to establish a substantive violation of the IDEA.  It appears that at this point in the process, plaintiff's sole challenge surrounds his two-days per week placement in the guidance office during eighth period.  According to plaintiff, this placement offered "no educational benefit" and was simply idle time.  Plaintiff, however, fails to point to any requirement that every minute of every school day must provide the maximum educational benefit.  Rather, as cited by the IHO:

> [I]n considering the adequacy of a myriad of transition services, an inquiring court must view those services in the aggregate and in light of the child's overall needs.  The test is whether the IEP, taken in its entirety, is reasonably calculated to enable the particular child to garner educational benefits. Were the law otherwise, parents could endlessly parse IEPs into highly particularized components and circumvent the general rule that parents cannot unilaterally dictate the content of their child's IEP."

*Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 30 (2008)(internal citations and quotations omitted).

Here, plaintiff does not even attempt to argue that, taken as a whole, the IEP fails to

confer an educational benefit.  To the contrary, the IHO correctly determined that the evidence demonstrated that throughout the school year, plaintiff made progress towards his IEP goals. Moreover, even if the School District was legally obligated to provide a specific educational benefit for every minute of the school day, this Court will not substitute its own judgment for that of the school authorities and the administrative determinations.  Here, the IHO relied on testimony from the School District that plaintiff's participation as an "office aide" during eighth period provided "in school work experience" with a goal of working on employability skills. Although plaintiff argues that some evidence shows that plaintiff did not attain these goals due to a lack of structure, the Court cannot say that the IHO erred in relying on the testimony presented by the School District.  Accordingly, the Court rejects plaintiff's argument that his placement in the guidance office for two periods per week amounts to the denial of a free and appropriate public education.

## **CONCLUSION**

For the foregoing reasons, judgment on the administrative record is GRANTED in favor of defendant.

IT IS SO ORDERED.


                                       /s/Patricia A. Gaughan  
                                      PATRICIA A. GAUGHAN  
Date:   8/22/13               United States District Judge